UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THERESA ANN FOLEY, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>ERIC H. HOLDER, JR., )<br>Attorney General, United States )<br>Department of Justice )<br>)<br>Defendant. ) | CIVIL ACTION<br>NO. 09-11157-JGD |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE**

October 5, 2010

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Theresa Ann Foley ("Foley"), has brought this action against Eric H. Holder, Attorney General of the United States ("Holder" or the "defendant"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. Foley has asserted claims for employment discrimination on the basis of gender (Count I) and disability (Count II), as well as a claim of retaliation (Count III), arising out of events that occurred during her employment with the Federal Bureau of Investigation ("FBI"). Complaint (Docket No. 1) ("Compl."). This matter is presently before the court on Holder's Fed. R. Civ. P. 12(b)(3) motion to transfer the case to the District of Columbia in accordance with 28 U.S.C. § 1406(a) on the grounds that venue is not proper in the District of Massachusetts under 42 U.S.C. § 2000e-5(f)(3) – the statute that governs venue in Title

VII cases.[1]  For the reasons detailed below, the motion to transfer pursuant to 28 U.S.C. § 1406(a) is ALLOWED, and the case will be transferred to the District of Columbia.[2]

## II.  STATEMENT OF FACTS

When ruling on a pre-trial motion challenging venue "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.  A district court may examine facts outside the complaint to determine whether its venue is proper."  Turnley v. Banc of Am. Inv. Servs., Inc., 576 F. Supp. 2d. 204, 211 (D. Mass. 2008) (quoting  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2004)).  Applying this standard to the instant case, the relevant facts are as follows.

Foley began working for the FBI in January 2000.  Compl. ¶ 14.  In 2003, Foley requested, and was granted, a one-year temporary duty assignment to the detention facility maintained by the U.S. Government at Guantanamo Bay, Cuba ("Guantanamo"), where she was to interrogate detainees.  Id.  Immediately prior to this assignment, Foley was assigned to the Washington Field Office in Washington, D.C., and she remained assigned to that Office throughout her work in Guantanamo.  Foley Sworn Statement

---

[1]  At issue is the "Defendant's Motion to Dismiss for Improper Venue or, Alternatively, to Transfer to the District of Columbia" (Docket No. 17).  However, the defendant has waived his request that the matter be dismissed.

[2]  The defendant has argued, in the alternative, that even if venue is proper here the matter should be transferred to the District of Columbia pursuant to 28 U.S.C. § 1404(a) due to the convenience of the parties and witnesses.  This argument will not be addressed in light of the conclusion that venue is improper in Massachusetts as a matter of law.

(Docket No. 18-1) at pp. 2, 46; Affidavit of Theresa Ann Foley (Docket No. 22) ("Foley Aff.") ¶ 6.

Foley first arrived at Guantanamo on October 7, 2003. Compl. ¶ 15. Foley claims that when she first arrived at Guantanamo, she was assigned to vermin-infested housing because of her gender, and that she ultimately contracted the disease Leptospirosis as a result of this housing assignment. Id. at ¶¶ 15-17. Foley also claims that she was subjected to a hostile work environment during her temporary duty assignment at Guantanamo, and that this conduct was known, tolerated, and encouraged by the FBI. Id. at ¶¶ 19-21.

In January of 2004, Foley was diagnosed as suffering from Leptospirosis when she returned to Boston for medical treatment, having previously been treated at the U.S. Naval Hospital at Guantanamo and at the Cleveland Clinic in Ft. Lauderdale, Florida. Id. at ¶ 26. After a brief stay in Boston, she returned to Guantanamo, where her medical condition worsened. Id. at ¶¶ 27-29. She experienced difficulty walking, kneeling, and using her right leg, among other problems, and so informed her supervisors. Id. at ¶ 27.

In March or April of 2004, Foley was required to undergo firearms qualification. Id. at ¶ 30. The manager in charge of administering the test allowed Foley to shoot from a standing position, as a result of which Foley was able to avoid shooting from a prone or kneeling position, which her condition made very difficult. Id. However, another supervisor required Foley to re-take this test in May of 2004 without any modification, indicating that she may be considered unfit for duty if she refused. Id. at ¶ 32. While performing the unmodified test, Foley seriously injured her knee, and tore muscles in her

-3-

right leg.  Id. at ¶ 33.  According to Foley, the damage to her leg allowed the Leptospirosis to enter her leg muscle, bone marrow, and central nervous system, and the bacteria further caused a cranial stem fluid leak.  Id. ¶ 35.

In July of 2004, Foley traveled to Boston to conduct work-related interviews and had surgery related to her disability.  Id. at ¶ 37.  Foley's physicians advised Foley that she should not return to Guantanamo for medical reasons, and she was placed on leave. Id.  Since July 2004, Foley has resided in her parents' home in Boston while being treated for her medical conditions.  Id.  She has not been able to work.  Id. at ¶¶ 37, 42.  Her medical condition has continued to worsen.  Id. at ¶¶ 39-42.

Foley was "technically assigned to Washington, D.C." from October 2004 through December 2005.  Foley Aff. ¶ 6.  She requested and received a hardship transfer to the FBI's Boston Division in December 2005.  Foley Sworn Statement at p. 46; Foley Aff. ¶ 10.  However, she has not been able to work at the Boston Field Office (or elsewhere) since her assignment to Boston because of her injury.  Foley Aff. ¶¶ 10-14, 16.

Discovery has established that in 2001, Foley completed a "Personnel Resource List (PRL)" in which she reported that she "wished to be considered for transfer" to the Providence (Rhode Island) Resident Agency, which is within the Boston Division.  See Defendants' Supplemental Memorandum (Docket No. 25) ("Def. Supp. Mem.") at Ex. 1. She further indicated on the form that she did not wish to be considered for transfer to the "headquarter city" of the Boston Division.  Id.  Boston is the headquarter city of the

Boston Division. There is nothing in Foley's records which indicates that, if she had not been disabled, she would have wanted to be located in Boston.

Additional facts will be provided below where appropriate.

### III. DISCUSSION

#### A. Venue Under Title VII

In a Title VII action, venue is governed by 42 U.S.C. § 2000e-5(f)(3) rather than the general venue statute, 28 U.S.C. § 1391. See Donnell v. Nat'l Guard Bureau, 568 F. Supp. 93, 94 (D.D.C. 1983) (42 U.S.C. § 2000e-5(f)(3) "controls any other venue provision governing actions in federal court"); Turbeville v. Casey, 525 F. Supp. 1070, 1071 (D.D.C. 1981) (where "Title VII issues predominate, the Title VII venue provision should govern"). See also Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir. 1969) (noting the statute defines the "four judicial districts in which employment discrimination suits may be filed."). This venue provision applies to actions against the federal government. Archuleta v. Sullivan, 725 F. Supp. 602, 604 (D.D.C. 1989). Thus a Title VII action

> may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] <u>in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice</u>, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

Turnley, 576 F. Supp. 2d at 212 (emphasis added). "This statutory scheme indicates that Congress intended to limit venue in Title VII cases to those jurisdictions concerned with the alleged discrimination." Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 277 (D.D.C. 2002) (citing Stebbins, 413 F.2d at 1102). Moreover, courts should apply "a 'commonsense appraisal' of events having operative significance" in determining where venue lies. Darby, 231 F. Supp. 2d at 277.

"Only one of Title VII's venue provisions needs to be satisfied in order for venue to be proper." Turnley, 576 F. Supp. 2d at 212. Foley contends that jurisdiction is proper in the Commonwealth of Massachusetts because this is the judicial district in which she "would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). The record does not support this contention.[3]

Foley was assigned to the Washington D.C. office throughout her active employment with the FBI, even when she was physically located in Guantanamo. Her Personnel Resource List, which Foley had relied on as evidence of her desire to work in Boston (see Foley Aff. ¶ 20), in fact shows that she never indicated a preference for Boston, but, instead, informed the FBI that she would be willing to work in Providence, Rhode Island. Thus, but for the alleged discrimination which Foley suffered in Guantanamo, she likely would have been assigned to Washington D.C. or, perhaps, Rhode Island. There is no

---

[3] After discovery, Foley withdrew her claim that venue is proper in Massachusetts because this is where the relevant employment records are maintained and administered. It is now undisputed that such records are maintained and administered elsewhere. See Plaintiff's Supplemental Memorandum (Docket No. 24) ("Pl. Supp. Mem.") at 2.

evidence that she would have been assigned to Boston — a place that she never even requested. As a result, the instant case differs significantly from <u>Johnson v. Washington Gas Light Co.</u>, 89 F. Supp. 2d 45 (D.D.C. 2001), on which the plaintiff relies. In <u>Johnson</u>, the employee-plaintiff had "been transferred, reassigned, and rotated to various employment sites on the basis of the changing needs of defendant's various offices" in the course of his 25 years of employment. <u>Id.</u> at 47. The court concluded that the "record establishes that it is *likely* that, had plaintiff received one of the positions he sought, he would have been assigned to work in the District of Columbia at some point." <u>Id.</u> Here, apart from Foley's naked assertion, there is no evidence that she was likely to end up in Boston either by request or based on the FBI's needs.

The fact that Foley came to Boston for medical treatment and was then administratively assigned to Boston as part of a hardship transfer does not alter this court's conclusion. Foley never worked out of the Boston Field Office, and her administrative transfer to Boston was based on the location of her family and her personal support system rather than on the needs of her employer. There is simply no evidence that but for the discrimination she allegedly suffered in Guantanamo, she would have worked out of the Boston Field Office.

This court recognizes that the transfer of this case to Washington D.C. may cause Foley considerable hardship, and is hopeful that, as the defendant represented in court, the government will work with the plaintiff and take her physical limitations into consideration as the case proceeds. This court further recognizes that the statutory

scheme probably did not contemplate the present situation, where the physical limitations of the plaintiff make venue in any of the designated locales very difficult. Nevertheless, § 2000e-5(f)(3) "clearly evinces congressional intent that venue for actions brought under the Act be limited to district courts having a connection with the alleged discrimination." Bolar v. Frank, 938 F.2d 377, 378-79 (2d Cir. 1991) (discussing Rehabilitation Act that incorporates § 2000e-5(f)(3)). This court is bound by the statutory scheme. See Stebbins, 413 F.2d at 1102-03.

## IV. CONCLUSION

The parties agree that if venue is not proper in Massachusetts, the case should be transferred to the United States District Court for the District of Columbia, and the defendant has withdrawn his request that the case be dismissed. Therefore, and for the reasons detailed herein, defendant's motion to transfer (Docket No. 17) is ALLOWED, and this matter will be transferred to the United States District Court for the District of Columbia.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge